**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SEAN P. HILGENDORF**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER WOODBURN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1312-CR-638 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Elizabeth C. Hurley, Judge
Cause No. 71D08-1303-FD-266

**August 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Christopher Woodburn appeals his conviction for domestic battery as a class D felony. Woodburn raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

The facts most favorable to the conviction reveal that in March of 2013, Woodburn was living with his girlfriend Michelle Murray and her daughters R. and P. in South Bend, Indiana. On March 27, 2013, Woodburn and Murray argued "off and on" during the day, and in the afternoon Woodburn grabbed Murray's purse, which contained Woodburn's wallet and keys, and took the purse into the upstairs bathroom and tried to obtain his wallet and keys from the purse. Transcript at 16. Murray had previously taken Woodburn's wallet and keys because she was looking for a woman's phone number that she believed Woodburn had in his possession. R. and P. followed Murray upstairs and stood in the hallway near the entrance to their bedrooms as Murray and Woodburn argued. Murray attempted to enter the bathroom to retrieve her purse, Woodburn tried to close the door on her, Murray stuck her right arm into the doorway and grabbed the doorknob with her other hand, and Woodburn bit Murray on her right forearm which caused her to scream. P. ran to a neighbor's home and asked for help, and the neighbor called the police. Murray exited the home, showed R. the bruise on her arm, and told R. that Woodburn bit her.

South Bend Police Officer Kayla Dawson responded to the scene and spoke with Murray around 5:15 p.m. At one point, Murray began to cry and informed Officer

Dawson that Woodburn bit her on the right forearm, and Officer Dawson observed bruising and a bite mark consistent with Murray's account of the biting incident on Murray's arm. Officer Dawson photographed the injuries.[1] Murray also told Officer Dawson that Woodburn threatened to "post nude photographs of [her] if [she] told the police" what had occurred. Id. at 37. Officer Dawson made the decision to arrest Woodburn and read him his Miranda rights, and afterward Woodburn admitted that he and Murray had been arguing and "that it had gotten physical" but did not want to speak further about the incident. Id. at 126.

On March 28, 2013, the State charged Woodburn with domestic battery as a class D felony. On October 17, 2013, the court commenced a jury trial in which evidence consistent with the foregoing was presented. The State called Murray to the stand, who indicated at the outset that she did not want to be in court that day because she was not feeling well and wanted the charge against Woodburn dismissed. When first asked by the prosecutor about her attempt to enter the bathroom to retrieve her purse, Murray testified:

> I didn't go all the way into the bathroom. I reached into the bathroom door. . . . I reached in his coat pocket and I wound up – how I did it I don't know, but I had ahold of the doorknob on the bathroom door and I wound up pulling the door closed a little bit, and I scrapped [sic] my arm on the door.

Id. at 18. The prosecutor asked if she reported this to the police, Murray replied "[u]h-huh," the prosecutor asked what else happened, and Murray testified: "Well, this is kind

---

[1] We note that an exhibits volume is not contained in the record on appeal.

of embarrassing to say but we made up and had sex." Id. After asking Murray more questions about the timeline of events and where her children were when she and Murray had sex, the prosecutor asked if it was her testimony that she reported to Officer Dawson that she closed the door on her arm, Murray responded affirmatively, and the prosecutor asked: "Isn't it true that when you actually got into Officer Dawson's car, you started crying and told her that [Woodburn] bit you?" Id. at 21. Woodburn's counsel objected to the question as leading, the prosecutor replied that it was an impeachment question, and the court overruled the objection.

Soon after, the prosecutor asked the court if the jury could be excused, and at sidebar explained that she wanted to warn Murray about the penalties of perjury. After some discussion between the prosecutor, Woodburn's counsel, and the court, the court agreed to excuse the jury and advised Murray "that if the State believes you've perjured yourself or that you're lying under oath . . . they can file charges." Id. at 27. After the jury was brought back into the courtroom, the following exchange took place between the prosecutor and Murray:

Q    [Murray], you indicated you did tell Officer Dawson that [Woodburn] bit you.

A    Yes.

Q    Explain to me when that happened.

A    Well, when we were arguing.

Q    What location in the house did that occur?

4

A       The bathroom.

Q       Where at in the bathroom?

A       I was on the outside of the bathroom, he was on the inside of the bathroom, I stuck my arm in the door.

Q       Where were your kids at that time?

A       [P.] was in her room and [R.] was in her room.

Q       Where did [Woodburn] bite you?

A       In the arm.

Q       What happened after he bit you?

A       [P.] went downstairs and ran into the neighbor's house and . . . I went right behind her.

Id. at 29.

P., who was eleven years old at the time of trial, testified that on March 27, 2013, she observed Murray and Woodburn arguing and screaming and that Woodburn took Murray's purse and keys. P. testified regarding the bathroom incident that she did not see Woodburn bite Murray but that she "kind of [] saw his head move back up" and that "his head was right by [Murray's] arm." Id. at 66, 71. P. testified that immediately after she witnessed this Murray said "ouch really loud." Id. at 71. P. also testified that she observed Murray's arm later in the day and "there was a bruise and like a bite mark." Id. at 72. R., who was fifteen years old, testified that she saw Murray's arm following the incident and observed "a little bruise mark" which was caused when Woodburn "bit her." Id. at 93. Following an objection which was overruled, R. testified, over objection, that

5

she knew the bruise was caused by a bite from Woodburn because after Murray "talked to the cops, she came and talked to us and then she showed us what happened and told us." Id. at 95.

Following R.'s testimony, the court recessed for the day and reconvened the next day, October 18, 2013. Officer Dawson testified that when she came upon the scene and encountered Murray, Murray "appeared to be upset, looked like she had been crying, her face was red, her eyes were glossy." Id. at 118. Officer Dawson also indicated that Murray did not claim at that time that the bite occurred during a sexual encounter. The State rested, and defense counsel recalled Murray to the stand who testified that the bite occurred during sex, and she indicated that it was not "done in a rude, insolent or angry manner during the course of sex . . . ." Id. at 137. She testified that she changed her testimony from the day before because she felt "like [she had] been coerced so to speak threatened" by "[s]everal people" including her mother, her daughter, and the prosecutor, who "makes [her] nervous." Id. at 138. Murray also acknowledged on cross-examination that she had spoken with the prosecutor's office "several times" after giving her statement to Officer Dawson regarding the incident, but she did not claim that the bite had been sexual in nature "until after [she] had been subpoenaed for trial . . . ." Id. at 164-165.

The jury found Woodburn guilty as charged. On December 9, 2013, the court held a sentencing hearing and sentenced Woodburn to one year suspended to probation.

DISCUSSION

The issue is whether the evidence is sufficient to sustain Woodburn's conviction for domestic battery as a class D felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

The offense of domestic battery is governed by Ind. Code § 35-42-2-1.3, which at the time of the offense provided:

> (a)    A person who knowingly or intentionally touches an individual who:
>
> * * * * *
>
> (2)    is or was living as if a spouse of the other person as provided in subsection (c);[2] . . .

---

[2] At the time of the offense, Ind. Code § 35-42-2-1.3(c) provided:

In considering whether a person is or was living as a spouse of another individual for purposes of subsection (a)(2), the court shall review:

> (1)    the duration of the relationship;
>
> (2)    the frequency of contact;
>
> (3)    the financial interdependence;
>
> (4)    whether the two (2) individuals are raising children together;
>
> (5)    whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and

7

in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

(b)    However, the offense under subsection (a) is a Class D felony if the person who committed the offense:

* * * * *

(2)    committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense.

Ind. Code § 35-42-2-1.3 (Supp. 2012) (subsequently amended by Pub. L. No. 158-2013, § 421 (eff. July 1, 2014)).

Woodburn acknowledges that the State "proved that Murray and Woodburn were living as if spouses, that Woodburn knowingly touched Murray, and that there were two children under sixteen (16) years of age present when the touching occurred," and he contends that "the State failed to prove [] that the touching was done in a rude, insolent, or angry manner." Appellant's Brief at 4-5. Woodburn argues that "Murray's sworn testimony at trial" contradicted the theory of the State's case that Woodburn bit Murray during the incident in the bathroom when Murray testified that the bite occurred "prior to their arguing at the bathroom door," was "not rude, insolent or angry" and "was done during consensual sex." Id. at 5. Woodburn also argues that "[t]he State impeached Murray by [asking] her if she had told Officer Dawson that [he] had bitten her during the

---

(6)    other factors the court considers relevant.

(Supp. 2012) (subsequently amended by Pub. L. No. 158-2013, § 421 (eff. July 1, 2014)).

8

argument at the bathroom door," that "this testimony was impeachment testimony and not direct substantive evidence" and that "evidence admitted only for impeachment may not be used as substantive evidence." Id. The State asserts that Woodburn's argument is an invitation to reweigh the evidence.

The record reveals that Woodburn and Murray had been arguing during the day of March 27, 2013, when at one point Woodburn grabbed Murray's purse and took it into the upstairs bathroom. While Murray struggled to enter the bathroom, Woodburn bit her on the right forearm, causing Murray to scream. P. observed the incident and, although she did not specifically see Woodburn bite Murray, she did observe Woodburn's head "move back up" and that "his head was right by [Murray's] arm." Transcript at 66, 71. Bruising and bite marks were noticeable on Murray's arm and were photographed by Officer Dawson. Murray told Officer Dawson that Woodburn bit her on the right forearm. As testified to by R., Murray's fifteen year old daughter, Murray showed the children the bite mark and told them that Woodburn had bitten her.

To the extent that Woodburn suggests that impeachment evidence was offered for the truth of the matter asserted and that he was convicted thereon, he is mistaken. As noted above, following Murray's initial testimony that she scraped her arm on the door and then that the bite was the result of consensual sex, the prosecutor asked Murray an impeachment question regarding her initial statement to Officer Dawson. Soon after, the prosecutor asked that the jury be excused and that Murray be advised of her duty to tell the truth or face a potential charge of perjury. When the trial recommenced, Murray

9

testified specifically that Woodburn bit her "[i]n the arm" when she stuck her arm in the door while she was standing outside of the bathroom. <u>Id.</u> at 29. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable jury could have found Woodburn guilty of domestic battery as a class D felony.

## CONCLUSION

For the foregoing reasons, we affirm Woodburn's conviction of domestic battery as a class D felony.

Affirmed.

BARNES, J., and BRADFORD, J., concur.